UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

| | |
|---|---|
| KATHRYN D.,          )<br>      Plaintiff,     )<br>                   )<br>v.                         )   CAUSE NO.: 4:20-CV-64-JVB<br>                   )<br>KILOLO KIJAKAZI, Acting Commissioner )<br>of the Social Security Administration,    )<br>      Defendant.          ) | |

## OPINION AND ORDER

Plaintiff Kathryn D. seeks judicial review of the Social Security Commissioner's decision denying her disability benefits and asks this Court to remand the case. For the reasons below, this Court remands the Administrative Law Judge's decision for further administrative proceedings.

## PROCEDURAL BACKGROUND

Plaintiff applied for supplemental social security income benefits on February 20, 2018. In her application, Plaintiff alleged that she became disabled on January 1, 2005. (AR 15). After a hearing in 2019, the Administrative Law Judge (ALJ) found that Plaintiff suffered from the severe impairments of degenerative disc disease to the cervical and lumbar spine, carpal tunnel syndrome, obesity, anxiety, post-traumatic stress disorder, bipolar disorder, and depression. (AR 17). The ALJ also found that Plaintiff suffered from the non-severe impairment of hypertension. (AR 17). The ALJ found that Plaintiff has no past relevant work. (AR 26). However, the ALJ found that she is capable of performing jobs in the national economy, such as laundry worker, cook's helper, and cleaner. (AR 26-27). Therefore, the ALJ found her to be not disabled since February 20, 2018, the date the application was filed. (AR at 27). This decision became final when the Appeals Council denied Plaintiff's request for review. (AR 1).

1

## STANDARD OF REVIEW

This Court has authority to review the Commissioner's decision under 42 U.S.C. § 405(g). The Court will ensure that the ALJ built an "accurate and logical bridge" from evidence to conclusion. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014). This requires the ALJ to "confront the [plaintiff's] evidence" and "explain why it was rejected." *Thomas v. Colvin*, 826 F.3d 953, 961 (7th Cir. 2016). The Court will uphold decisions that apply the correct legal standard and are supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Evidence is substantial if "a reasonable mind might accept [it] as adequate to support [the ALJ's] conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

## DISABILITY STANDARD

The Commissioner follows a five-step inquiry in evaluating claims for disability benefits under the Social Security Act:

> (1) Whether the claimant is currently employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling; (4) if the claimant does not have a conclusively disabling impairment, whether she can perform her past relevant work; and (5) whether the claimant is capable of performing any work in the national economy.

*Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012). The claimant bears the burden of proof at every step except step five. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

## ANALYSIS

Plaintiff offers three arguments to support her request for remand: the ALJ erred in the weighing the opinions of the state agency physicians, the ALJ failed to properly accommodate her moderate limitations in concentrating, persisting, and maintaining pace in the assessment of Plaintiff's residual functional capacity (RFC), and the ALJ erred in weighing the opinion of her treating advanced nurse practitioner.

## A. Advanced Nurse Practitioner

Gail Faust, APN, provided a medical opinion on May 16, 2019, stating that she had been seeing Plaintiff once or twice a month for about fifteen months. (AR 735). Ms. Faust stated that Plaintiff suffers from Bipolar Disorder and PTSD, and gave her a GAF score of 45.[1] *Id.* Ms. Faust stated that despite being on five medications, Plaintiff's moods "remain unstable" with visual hallucinations, paranoia, and panic attacks. *Id.* Ms. Faust opined that Plaintiff's prognosis is poor. *Id.* Ms. Faust then found that Plaintiff would be either unable to meet competitive standards or have no useful ability to function in every category of mental abilities and aptitudes needed to do unskilled work. (AR 737-38). In explanation, Ms. Faust stated that Plaintiff has "mood swings – can be rude to others – has hallucinations which would prevent productive activities – has panic attacks and cannot tolerate stress or change in routine – perceives criticism as an attack – diagnosis and medications cause poor memory." (AR 738). Ms. Faust then opined that Plaintiff is seriously limited, but not precluded from adhering to basic standards of neatness and cleanliness, unable to meet competitive standards in interacting appropriately with the general public, and no useful ability to function in the other areas under "mental abilities and aptitude needed to do particular types of jobs." (AR 738). Finally, Ms. Faust opined that Plaintiff would be absent more than four days per month due to her impairments. (AR 739).

The ALJ found Ms. Faust's opinion to be unpersuasive, stating that Plaintiff "only received conservative and sporadic treatment despite Ms. Faust's extremely limited opinion." (AR 24). The ALJ found that if Plaintiff was as limited as Ms. Faust opined, then medical providers "would have

---

[1] GAF is a numerical scale of 0-100 used to rate the psychological, social, and occupational functioning of adults. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 30 (4th ed. 1994). A GAF score in the 41-50 range indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). *Id.* at 32. GAF scores are no longer used by the American Psychiatric Association, *Williams v. Colvin*, 757 F.3d 610, 613 (7th Cir. 2014), and the regulations state that GAF scores have no "direct correlation to the severity requirements in our mental disorders listings." 65 Fed. Reg. 50,746, 50,765 (Aug. 21, 2000).

ordered a more aggressive treatment protocol." *Id.* The ALJ noted that Plaintiff was never hospitalized, "only received ongoing therapy with psychiatric treatment by way of medication adjustment," and that her examinations were "mostly normal and symptoms were managed with medication treatment." *Id.* Finally, the ALJ found that Ms. Faust did not provide specific limitations and stated that she is not a medically acceptable source. *Id.*

As an initial matter, advanced nurse practitioners are acceptable medical sources for claims filed on or after March 27, 2017. 20 C.F.R. § 404.1502(a)(7). Plaintiff filed her claim on February 20, 2018, and therefore Ms. Faust is a medically acceptable source. (AR 15). The ALJ erred in finding her to not be a medically acceptable source.

Moreover, the ALJ mischaracterized evidence in finding that Plaintiff was never hospitalized, and that her examinations were mostly normal and her symptoms were managed with medication. Plaintiff was hospitalized involuntarily from July 11, 2017 through July 14, 2017, due to depression, auditory hallucinations, and suicidal thoughts without a plan. (AR 238-36). The hospital noted that Plaintiff had been to the emergency room multiple times prior to her involuntary inpatient stay. (AR 328-29.) While in the hospital, Plaintiff started three different antipsychotic medications, and the hospital noted that she had "failed a minimum of 3 trials of monotherapy" and therefore required multiple medications to manage her symptoms. (AR 329). During the hospital stay, Plaintiff presented with mild psychomotor agitation, pressured speech, poor judgment, and poor insight. (AR 334-35). The hospital stated that her prognosis was "guarded." (AR 335). By her discharge on July 14, Plaintiff's prognosis was "fair." (AR 336). The ALJ was incorrect in finding that Plaintiff was never hospitalized for her mental impairments, as Plaintiff had multiple ER visits and one involuntary hospital admission due to her symptoms.

The ALJ also mischaracterized evidence in finding that Plaintiff's examinations were mostly normal. In mental health treatment notes, both individual therapy and with psychiatric APN's, Plaintiff regularly appeared symptomatic and required multiple medication changes to manage her symptoms. In April 2017, Plaintiff presented tearful, stated she felt alone, was overwhelmed, felt unappreciated, and the treater noted that she had difficulty expressing her needs effectively and appropriately. (AR 342-43). In therapy in April 2017, Plaintiff was again tearful, her anxiety was "through the roof," and she missed four days of work that month due to her symptoms. (AR 353-54). In May 2017, Plaintiff reported mood swings and was put on a new medication. (AR 357). In June 2017, Plaintiff was informed that she would be unable to receive benzodiazepines from her treatment provider due to her failure to get a urine drug screen done in a timely manner. (AR 361). As a result, her Prozac was increased to manage symptoms. *Id.* After her discharge from the July 2017 hospital inpatient stay, Plaintiff reported that she was not doing well. (AR 365). She reported hearing voices and having paranoid thoughts. *Id.* Plaintiff was instructed to begin reducing Seroquel so that she could start Abilify, which is what she was put on during her hospital stay. (AR 366). In September 2017, her Abilify was increased. (AR 373). In October 2017, a second dose of Geodon was added to Plaintiff's morning medications for "mood swings and psychotic symptoms." (AR 377).

In January 2018, Plaintiff presented to Ms. Faust with "symptoms of a major depressive episode" and was disheveled with poor hygiene, depressed mood, flat affect, fair judgment, fair memory, and fair concentration. (AR 398-99). Ms. Faust assigned her with a GAF of 55. Later that month, Plaintiff was noted to be very tearful and with low energy. (AR 409). In February 2018, Plaintiff admitted to a suicide attempt in 2017, where she attempted to overdose on her Geodon medication. (AR 417). In March 2018, Plaintiff's moods were listed as "not stable," but her lithium

medication could not be increased due to her being at the maximum dosage. (AR 403). She was started on Tegretol, and her Geodon was increased due to audio hallucinations. *Id.* Plaintiff reported increased anxiety when leaving the house. *Id.*

On May 23, 2018, Plaintiff requested an emergency appointment. (AR 469). She reported that her anxiety was "extremely high," and the treatment note stated she was crying and in the fetal position. *Id.* She continued to report hallucinations, and her Tegretol was increased. *Id.* At her regular appointment on May 30, 2018, Ms. Faust noted that her Tegretol and Xanax were increased at her last visit, and that although her moods were stable, her anger was increasing. (AR 467). Plaintiff was started on Vraylar and was instructed to start tapering off her Geodon and lithium. *Id.* In June 2018, Ms. Faust continued to decrease Plaintiff's Geodon and lithium while increasing the Vraylar and Tegretol. (AR 465). In July 2018, Plaintiff presented with a depressed and anxious mood, slight psychomotor agitation, tearful, and despair and hopelessness at the thought of her boyfriend leaving her. (AR 475). In August 2018, Ms. Faust noted that Plaintiff's Tegretol and Trazadone were increased at her last visit, and Tegretol was increased again at this visit. (AR 463). Plaintiff was noted to be crying a lot and reported some visual hallucinations. *Id.* Ms. Faust found Plaintiff's memory to be poor and stated that Plaintiff makes poor choices. *Id.* Plaintiff was started on Restoril. *Id.* Finally, in August 2018, Plaintiff was flagged for suicidal ideation concerns. (AR 474). While Plaintiff did not have a suicidal plan or acknowledge suicidal thoughts, she did state she was at risk of self-harm if her boyfriend left her. *Id.* She presented with dysphoric mood, tearful, fears of abandonment, and was noted to go to extraordinary lengths to avoid or to correct rejection. *Id.*

These examinations show ongoing symptoms, and they do not indicate that Plaintiff's examinations were mostly normal as the ALJ found. (AR 24). Plaintiff regularly presented with

psychiatric symptoms, and her medications were changed regularly, sometimes even monthly, due to her ongoing symptoms. (AR 358, 361, 366, 373, 377, 403, 463, 465, 467, 469, 471). The ALJ mischaracterized the evidence in finding her examinations normal and her symptoms mostly managed by medication. Plaintiff has few, if any, normal examinations, and instead presents with severe symptoms frequently both to therapy and to her medication examinations with the Advanced Nurse Practitioner. (AR 342, 344, 345, 346, 347, 353, 354, 357, 365, 369, 377, 395, 398, 403, 409, 417, 419, 459, 463, 469, 474, 475). Moreover, Plaintiff regularly admitted to audio and/or visual hallucinations that were not improving on medication. (AR 328-29, 347, 353, 365, 404, 406-07, 418-19, 459, 461-63, 469, 471). The ALJ has failed to explain how any of the above information translates to normal examinations or symptoms well-managed by medication. In mischaracterizing the medical evidence, the ALJ has failed to build an "accurate and logical bridge from the evidence to his conclusion." *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). This error requires remand.

## B. Other Issues

Plaintiff also raises additional issues regarding the RFC and other medical opinions. Because the ALJ erred in evaluating the opinion of APN Gail Faust, remand is appropriate. Proper analysis and discussion of both Ms. Faust's medical opinion and a full examination of the medical evidence may alter the discussion and analysis of these other areas. Therefore, the Court declines to further examine Plaintiff's other arguments.

## C. Request for Award of Benefits

Though Plaintiff has requested remand for an award of benefits, the alternative requested relief of remand for further administrative proceedings is granted because the Court cannot say that "all factual issues involved in the entitlement determination have been resolved and the

resulting record supports only one conclusion—that the applicant qualifies for disability benefits." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011).

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** the alternative relief requested in Plaintiff's Brief [DE 20], **REVERSES** the final decision of the Commissioner of Social Security, and **REMANDS** this matter for further administrative proceedings. The request for an award of benefits is **DENIED**.

SO ORDERED on October 19, 2021.

s/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN, JUDGE
UNITED STATES DISTRICT COURT